UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY ROBERTSON,                        Civil Action No. 14-14002

    Plaintiff,                                HON. MARIANNE O. BATTANI
                                                   U.S. District Judge
v.                                           HON. R. STEVEN WHALEN
                                                   U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Gary Robertson ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below I recommend that Defendant's motion [Doc. #18] be GRANTED and that Plaintiff's motion [Doc. #15] be DENIED.

## PROCEDURAL HISTORY

On December 30, 2011 and January 20, 2012 Plaintiff filed applications for DIB and SSI respectively, alleging disability as of March 20, 2011 (Tr. 155-160, 161-167). After the

initial denial of the claim, he requested an administrative hearing, held on April 10, 2013 in Detroit, Michigan before Administrative Law Judge ("ALJ") Gregory Holiday (Tr. 29). Plaintiff, represented by attorney Elizabeth Blout, testified (Tr. 33-64), as did Vocational Expert ("VE") Zachary Matthews (Tr. 64-71). On May 7, 2013, ALJ Holiday found Plaintiff not disabled (Tr. 11-25). On August 18, 2014, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the Commissioner's decision on October 16, 2014.

## BACKGROUND FACTS

Plaintiff, born July 14, 1958, was 54 when the ALJ issued his decision (Tr. 25, 161). He completed one year of college and received training to work on a printing press (Tr. 184). He worked previously as a printer and personnel manager (Tr. 184). His application for benefits alleges disability as a result of depression, back problems stemming from a gunshot wound, knee problems, and swollen feet (Tr. 183).

### A.     Plaintiff's Testimony

Plaintiff offered the following testimony:

His current weight of 180 was approximately 10 pounds more than his typical weight due to lack of exercise (Tr. 33). He had "struggle[d]" to work since being shot in the back during a 1998 car-jacking (Tr. 34). Since 1998, he had experienced episodic arm numbness and back pain (Tr. 34). He had made multiple, unsuccessful work attempts since March, 2011 (Tr. 36).

Plaintiff was able to take care of his personal needs (Tr. 37). He lived by himself in

an apartment (Tr. 39). He did his laundry at his mother's house (Tr. 40). He was able to prepare simple meals and perform laundry chores with the help of his mother or girlfriend (Tr. 42). His wife passed away in 2010 (Tr. 44). He had two adult daughters (Tr. 44). After the death of his wife, he was admitted to a "sobriety house" as a result of drinking problems (Tr. 45). He also experienced claustrophobia-like symptoms after being locked in the trunk of a car during the car-jacking (Tr. 45). He was able to care for his apartment and visited with his girlfriend and family frequently (Tr. 48). He did not own a car but was able to drive (Tr. 49).

Watching television was "a big part" of Plaintiff's daytime activities (Tr. 50). He also read the newspaper and listened to a sports station (Tr. 51). He did not have a computer and did not use e-mail but had a cell phone (Tr. 52). He currently smoked and drank alcohol "every now and then" to ease his back pain (Tr. 53). He took Lexapro to stabilize his mood (Tr. 55). He did not use public transportation due to the high crime rate in his neighborhood (Tr. 57-58).

Plaintiff received psychological therapy twice a month and saw a psychiatrist once a month (Tr. 60). He was able to sit for up to one hour and stand for 20 minutes without a change of position (Tr. 60). He was unable to walk more than 100 feet at one time due to back pain (Tr. 61). Surgery had improved his left knee condition but once in a while, the knee "crack[ed]" on him (Tr. 62).

In response to questioning by his attorney, Plaintiff testified that one his medications

made him "lazy" and "withdrawn" (Tr. 62). Despite the use of pain medication, back pain caused nighttime sleep disturbances (Tr. 63). He was unable to carry even a gallon of milk (Tr. 63).

### B. Medical Evidence

#### 1. Treating Records

In February, 2012, Plaintiff sought emergency treatment for "a possible bug bite to his right scalp" (Tr. 234). He was diagnosed with cellulitis (Tyr. 234). He was prescribed antibiotics before being released (Tr. 235, 239). A physical examination was otherwise unremarkable (Tr. 242-244). Plaintiff exhibited a normal gait (Tr. 244). The same month, Plaintiff was prescribed Oxycodone for back pain (Tr. 303, 317). In March, 2012, an examining or treating physician found that Plaintiff was eligible for special housing on the basis of a permanent disability (Tr. 318-319).

In May, 2012, Plaintiff sought psychiatric treatment for depression, noting that his condition worsened after his wife's 2010 death (Tr. 249). Valrie Honablue, M.D. diagnosed Plaintiff with severe depression (Tr. 252). She noted that he had received alcohol abuse treatment in April, 2011 (Tr. 254). He reported "fair" physical health, denying that health problems affected the quality of his life (Tr. 255). Dr. Honablue assigned him a GAF of 50, noting a "low desire to work"[1] (Tr. 252). July, 2012 psychiatric records state that he was

---

[1] A GAF score of 41-50 indicates '[s]erious symptoms...[or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* ("*DSM-IV-TR*"), 34 (4th ed.

sleeping better and had an improved mood with new medication (Tr. 263, 265).

In October, 2012, Plaintiff reported level "8" back pain on a scale of 1 to 10 (Tr. 286). He exhibited a normal mood and affect (Tr. 287). In November, 2012, Plaintiff reported that prescribed medication did not resolve his back pain (Tr. 281). He appeared alert with normal motor function and clear speech (Tr. 283). March, 2013 psychiatric treating notes state that Plaintiff's mental condition was stable (Tr. 291). Treating notes state that he was well groomed with good hygiene and concentration (Tr. 292).

The same month, Dr. Honablue completed a medical source statement regarding Plaintiff's mental impairments, noting that Plaintiff experienced marked limitation in understanding, remembering, and carrying out complex instructions but was able to understand, remember, and carry out simple work tasks (Tr. 298). She found additionally that Plaintiff experienced marked limitation in interacting with the public, supervisors, and co-workers and in responding to workplace changes (Tr. 299). She found that Plaintiff's ability to interact with others was hampered by Post Traumatic Stress Disorder ("PTSD") (Tr. 299). A March, 2013 x-ray of the lumbar spine showed mild curvature and mild degenerative disease at L2-L3 and L3-L4 (Tr. 320).

### 2. Consultative and Non-Treating Records

In February, 2012, Cynthia Shelby-Lane, M.D. performed a one-time consultative

---

2000).

physical examination on behalf of the SSA, noting Plaintiff's reports of chronic back pain, arthritis of the left knee, occasional foot swelling, and depression (Tr. 212-213). Dr. Shelby-Lane noted that Plaintiff did not use a walking aid and demonstrated only mild tenderness of the lumbar spine with "slightly decreased" range of motion of the left knee (Tr. 214). Plaintiff appeared fully oriented with a normal affect (Tr. 214). Dr. Shelby-Lane noted that Plaintiff had not sought treatment for foot swelling (Tr. 214). She recommended "ongoing mental health care with treatment via medication" and "outpatient treatment with a mental health specialist" (Tr. 214). She found that Plaintiff "may have difficulty with prolonged standing, stooping, squatting, lifting and bending especially on the left side" but found no "neurological disorganization or joint instability" (Tr. 214). She noted that he did not experience manipulative limitations (Tr. 218).

The same day, psychologist Nick Boneff, Ph.D. performed a one-time consultative mental examination on behalf of the SSA (Tr. 221-225). Plaintiff reported that he had been severely depressed since his wife passed away in October, 2010 (Tr. 231). He denied psychiatric hospitalizations (Tr. 222). Dr. Boneff noted that Plaintiff's speech was goal oriented (Tr. 223). He assigned Plaintiff a GAF of 51, noting, that due to recent alcohol dependence, Plaintiff was not capable of handling his own benefit funds[2] (Tr. 224). He found that Plaintiff was capable of two or three-step tasks but would have difficulty "with

---

[2] A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. *DSM-IV-TR* at 34.

more complex cognitive tasks" (Tr. 225).

The following month, Kathy A. Morrow, Ph.D. performed a non-examining review of the consultative psychological records, finding that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 82). She found that Plaintiff could "tolerate low stress social demands and adapt to simple changes in routine" (Tr. 85).

### C. Vocational Expert Testimony

VE Zachary Matthews testified that Plaintiff previously held the jobs of press operator and bindery worker (Tr. 65). The ALJ then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education and work experience:

> [A]ssume a person . . . who is able to perform at not more than the light exertional level[3] with the following limitations: No more than occasional climbing; no more than occasional stooping or crouching; must avoid concentrated exposure to hazards like dangerous machinery, unprotected heights; limited to simple, routine tasks; must have work that's not at a production rate or a production pace, and I recognize that most jobs have some level of pace to them this is a restriction on the amount of pace; and must have a supervisor or other person check on the person's work up to four times per day, perhaps two times in the first half of the workday and another two times in the second half of the work day just to assure that the person is on task and

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

> has been on task. With those limitations, could such a hypothetical person perform either of the past jobs of Mr. Robertson? (Tr. 66).

The VE replied that given the above limitations, the individual would be unable to perform Plaintiff's former job but could perform the light, unskilled work of sorters, samplers, and weighers (5,200 jobs in the state-wide economy); packers (7,500); and stock clerk or order filler (4,700) (Tr. 67).

> The ALJ then amended the above question to include additional limitations:
>
> [T]he person can only occasionally operat[e] foot controls with the left lower extremity; no more than brief climbing of ladders . . . no more than 10 percent of a workday; and no climbing of any ropes or scaffolds; no more than brief climbing of ramps or stairs; no more than brief crouching; and in terms of kneeling no more than rare kneeling . . . up to 5 percent of a workday; no crawling at all (Tr. 67).

In response, the VE stated that the additional limitations would allow for the light, unskilled work of a receptionist and information clerk (1,600); counter and rental clerk (1,500); and office clerk (5,400) (Tr. 67-68).

The VE testified further that if the same individual also required "a sit/stand option with the ability to alternate between sitting and standing up to two times per hour," "no more than occasional operation of foot controls bilaterally," and "no more than occasional supervision," the individual could perform the office clerk position but the counter/rental clerk and receptionist/information clerk positions would be eliminated (Tr. 68).

The VE found that if the same individual were limited to sedentary work, he could perform the jobs of office clerk, (2,100) and "material movers hand" (1,000) (Tr. 69-70).

Finally, the VE testified that if the same individual needed to lie down up to 30 minutes twice a day, all competitive employment would be precluded (Tr. 70). In response to questioning by Plaintiff's attorney, the VE stated that if the individual were restricted to "seldom use of his hands," all work would be eliminated (Tr. 71).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "arthritis in the lumbar spine; arthritis in the left knee, status post surgery; edema in the bilateral feet; tobacco use disorder; alcohol use disorder in remission; and major depressive disorder" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). He found mild restrictions in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 15-16). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [C]laimant must be permitted to alternate between sitting and standing up to two times per hour. The claimant can only occasionally operate foot controls, can only briefly (up to 10% of the work day) climb ladders, ramps, or stairs, cannot climb any ropes of scaffolds, can only occasionally stoop, can only briefly crouch, can only rarely (up to 5% of the work day) kneel and cannot crawl. The claimant must avoid concentrated exposure to hazards like dangerous machinery and unprotected heights. The claimant is limited to simple, routine tasks. The claimant must have work that is not at a production rate or production pace. The claimant should have no more than brief, superficial interaction with the public and with co-workers. The claimant should have not more than occasional supervision (Tr. 17).

Citing the VE's testimony (Tr. 68), the ALJ determined that while Plaintiff was unable to

perform any of his past relevant work, he could work as an office clerk (Tr. 24).

The ALJ discounted Plaintiff's alleged degree of limitation (Tr. 17-23). He cited Dr. Shelby-Lane's observation that Plaintiff was "well developed, well nourished, cooperative and in no acute distress" and did not require the use of a walking aid (Tr. 20). The ALJ noted that the imaging studies did not support Plaintiff's alleged degree of physical limitation and that Plaintiff had not required psychiatric hospitalizations (Tr. 22-23). He noted that Plaintiff followed local sports teams, took care of his personal needs, and maintained relationships with his family and girlfriend (Tr. 23).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health &*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Substantial Evidence

Plaintiff argues that "substantial evidence" supports his application for benefits. *Plaintiff's Brief,* 11-14, *Docket #15.* He contends that the ALJ failed to provide "any rationale" for denying benefits. He faults the ALJ for giving limited weight to the GAF score of 50 assigned by Dr. Honablue. He argues that the ALJ did not provide "good reasons" for rejecting Dr. Honablue's findings as required by 20 C.F.R. § 1527(c)(2). Plaintiff also contends that the ALJ failed to discuss whether Plaintiff was capable of adhering to a competitive work schedule as required by SSR 96-8.

Contrary to Plaintiff's assumption, the fact that "substantial evidence" might support his claim does not direct a disability finding. "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Commr*., of Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006)(*citing Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001)). In contrast, a finding that the claimant is not disabled is permissible even where less than a preponderance of the evidence supports the determination. *Richardson, supra,* 402 U.S.at 401. Substantial evidence (as opposed to a preponderance of evidence) is within the "zone of choice within which the Commissioner can act, without the fear of court interference.'" *Buxton* at 772 (internal citations omitted). Moreover, as discussed in Section **B.**, below, substantial, if not a preponderance of the evidence supports the ALJ's Step Five findings.

Plaintiff's also argues that the ALJ's rejection of Dr. Honablue's March, 2013 opinion is procedurally and substantially inadequate. He contends that the ALJ did not provide "good reasons" for rejecting the opinion as required by 20 C.F.R. 1527(c)(2).

If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c) (2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013).

Plaintiff's "treating physician" argument is based on the largely faulty premise that the ALJ rejected Dr. Honablue's opinion. In fact, the RFC crafted by the ALJ is not inconsistent with Dr. Honablue's March, 2013 Medical Source Statement of Plaintiff's work-related activities. Dr. Honablue found that Plaintiff did not experience any limitation in understanding, remembering, or carrying out simple instructions but experienced marked limitations in understanding, remembering, and carry out complex instructions and in dealing

with the public, supervisors, and coworkers (Tr. 298-299). Consistent with those findings, the RFC limited him to unskilled, "simple, routine tasks" with no more than brief, superficial interaction with the public and with co-workers" and no more than "occasional supervision" (Tr. 17).

While the ALJ did reject Dr. Honablue's finding that Plaintiff had a GAF of 50, his reasons for doing so are well supported and explained. To begin with, the ALJ was not required to accord weight to, much less articulate his reasons for rejecting a GAF score. *See Kornecky v. Commissioner of Social Security,* 2006 WL 305648, *13 (6th Cir. February 9, 2006)(*citing Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir.2002)) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place"). In any case, the ALJ explained his reasons for rejecting the GAF of 50, noting Dr. Honablue assigned that the score after only one assessment (Tr. 21). He further noted that the GAF was no more than "a rough snapshot" of Plaintiff's mental functioning at the time of the examination (Tr. 21). Finally, the ALJ correctly observed that while Dr. Honablue found that Plaintiff's condition quickly improved with psychotropic medication and continued to remain stable (*see* Tr. 263, 265, 287, 291), she failed to update the original GAF score of 50 (Tr. 21).

Because the ALJ's discussion and conclusions regarding the treating opinion are well articulated and supported by substantial evidence, a remand is not warranted.

### B. The RFC

In addition, Plaintiff argues, in effect, that the ALJ did not explain his reasons for omitting a number of the professed limitations from the RFC found in the administrative opinion. *Plaintiff's Brief* at 15-17. He contends that the finding that he could perform work at the light exertional level is not supported by the record.

"RFC is what an individual can still do despite his or her limitations." SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" including objective findings, non-medical evidence, and activities of daily living. *Id.* at 7. The analysis of the physical functions must include the exertional activities of "sitting, standing, walking, lifting, carrying, pushing, [and] pulling" as well as the non-exertional limitations. 20 C.F.R. § 404.1545. However, "'[a]lthough a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing.'" *Delgado v. Commissioner of Social Sec.,* 30 Fed.Appx. 542, 547–548, 2002 WL 343402, *5 (6th Cir. March 4, 2002)(*citing Bencivengo v. CSS,* 251 F.3d 153, slip op. at 4 (Table)(3rd Cir. December 19, 2000)(punctuation added). "'[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (*citing Bencivengo* at slip op. 5).

Contrary to Plaintiff's contention, the ALJ's rationale for the RFC is thorough and well

supported. As to the mental limitations, the ALJ noted that Plaintiff was able to keep his apartment in good order, care for his personal needs, and live independently (Tr. 15, 37, 48). Although he did not own a car, he drove on occasion (Tr. 15). The ALJ acknowledged that Plaintiff experienced some degree of social limitation, noting that he socialized chiefly with his family and girlfriend and felt that others were "against him" (Tr. 16). The ALJ found moderate concentrational limitations based on Dr. Boneff's examination showing that Plaintiff did not experience delusions but had some weakness in short-term memory (Tr. 16). The limitations in social functioning and concentration are reflected in the RFC restricting Plaintiff to unskilled, simple, and routine work with only "brief superficial contact" with others (Tr. 17).

Regarding the physical limitations, the ALJ cited Dr. Shelby-Lane's consultative finding that Plaintiff did not require a walking aid and was cooperative, fully oriented, and in no acute distress (Tr. 20). He noted Dr. Shelby-Lane's finding that Plaintiff was able to squat and had not sought treatment for psychological problems or foot swelling (Tr. 20). He cited clinical studies showing that Plaintiff's limitations as a result of the back and knee condition were mild (Tr. 20, 22). The ALJ adopted Dr. Shelby-Lane's finding that Plaintiff required periodic postural changes (Tr. 20) by including at sit/stand option in the RFC (Tr. 17, 214). Because the RFC is well supported and explained, a remand is not warranted.

In addition to the above arguments, Plaintiff's brief contains a number of scattershot criticisms of the ALJ, none of which provide grounds for remand. For example, the

contention that the ALJ did not cite any "objective medical evidence" in support of the RFC is contradicted by a five-page discussion of medical records including the clinical testing and imagining studies. *Plaintiff's Brief* at 15 (Tr. 18-22). While he claims that "not a scintilla of evidence" supports the finding that he can perform light work, the ALJ noted that the treating and consultative records, showing a normal gait and muscle tone, along with the imaging studies, stood at odds with the alleged degree of limitation. *Id.* at 16 (Tr. 18-22). The March, 2013 imaging studies of the spine showing only "mild" curvature and degenerative disease undermine Plaintiff's testimony that he was unable to lift more than five pounds or walk for more than short distances (Tr. 320). His contention that the the disability determination was made purely on the basis that he could "watch the television," is particularly specious, given his testimony that he was able to care for himself and his apartment; interact with family members and a girlfriend; and drive and shop on occasion. *Id.*

     In closing, it should be noted that the decision to uphold the ALJ's findings should not be read to trivialize Plaintiff's physical and mental conditions or personal difficulties. Nonetheless, the determination that the Plaintiff was not disabled is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## **CONCLUSION**

For these reasons, I recommend that Defendant's motion for summary judgment [Doc. #18] be GRANTED and that Plaintiff's motion for summary judgment [Doc. #15] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: October 29, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on October 29, 2015, electronically and/or by U.S. mail.

s/C. Ciesla
Case Manager
